# IN THE CIRCUIT COURT FOR GARRETT COUNTY, MARYLAND
## CIVIL DIVISION

| | |
|---|---|
| TARGET LUMBER & LOGGING COMPANY, LLC<br><br>1320 Memorial Drive<br>Oakland, Maryland 21550<br><br>    Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY<br><br>5283 Corporate Drive, Suite 302<br>Frederick, Maryland 20703<br><br>SERVE: Robert S. Reverski, Jr. Esq.<br>         Midkiff, Muncie &ross, P.C.<br>         300 Arboretum Place, Suite 420<br>         Richmond, Virginia 23236<br><br> and<br><br>OHIO CASUALTY INSURANCE COMPANY<br><br>3510 Worthington Boulevard<br>Frederick, Maryland 21704<br><br>SERVE: Robert S. Reverski, Jr. Esq.<br>         Midkiff, Muncie &ross, P.C.<br>         300 Arboretum Place, Suite 420<br>         Richmond, Virginia 23236<br><br>    Defendants. | Case No.: |

## **COMPLAINT FOR DAMAGES AND OTHER RELIEF**

    COMES NOW the Plaintiff, Target Lumber & Logging Company, LLC (hereinafter referred to as "Target Lumber") by and through its counsel, Budow and Noble, P.C. and Walter E. Gillcrist, Jr. and David H. Fleishman, and files this Complaint for Damages and

Other Relief against the Defendants, Liberty Mutual Insurance Company (hereinafter referred to as "Liberty Mutual") and Ohio Casualty Insurance Company (hereinafter referred to as "Ohio Casualty"), asserting as follows:

1. This is an action for breach of an insurance contract existing between the parties and for damages and other relief arising from the insurance carriers' lack of good faith and arbitrary and capricious, as well as frivolous, decisions and handling of Plaintiff's claims for insurance benefits. Plaintiff, Target Lumber, is a small lumber and logging company which does business in the State of Maryland and has its principal place of business in the State of Maryland, specifically, Garrett County. The Defendant, Liberty Mutual, is an insurance carrier which maintains offices in Maryland, does substantial insurance-related business in Maryland, and all acts and conduct of Liberty Mutual in this action were directed to and/or communicated to the Plaintiff in Maryland. Liberty Mutual also derives substantial revenue in Maryland. Ohio Casualty is a business which is either the parent of or a subsidiary of or otherwise related to Liberty Mutual. These two insurance carriers have the same business address in Boston, Massachusetts and at all times pertinent, Ohio Casualty acted as the alter ego of Liberty Mutual and vice versa. Ohio Casualty, at all times pertinent, conducted insurance and insurance-related business in the State of Maryland, including Garrett County, like Liberty Mutual. Further, the claim representatives of Liberty Mutual who adjusted and handled the Plaintiff's claims did so on behalf of Liberty Mutual and Ohio Casualty. For all intents and purposes, Liberty Mutual and Ohio Casualty are one and the same insurance carrier.

2. This Honorable Court has personal jurisdiction over both Defendants, has subject matter jurisdiction, and venue is proper under Maryland law.

3. Both Liberty Mutual and Ohio Casualty are registered to do business in Maryland in the insurance and insurance-related fields through the Maryland's State Department of Assessments and Taxation. The Defendants are in good standing to conduct insurance business in Maryland through Maryland's "SDAT" as well as through the Maryland Insurance Commissioner, where they are registered.

4. Upon information and belief, Ohio Casualty was the underwriter of the insurance policy issued by Liberty Mutual to the Plaintiff which is the subject of this action. Moreover, Liberty Mutual and Ohio Casualty are agents of each other and acted in furtherance of their agency in all dealings with the Plaintiff that are the subject of this action.

5. On or about June 25, 2019, Target Lumber sustained a very substantial loss as a result of arson to four (4) vehicles and/or pieces of equipment which were owned by and used by Target Lumber in its business, and which were vital to Target Lumber in its conduct of its business. On the date of this "loss," Target Lumber was insured by the Defendants under a policy of insurance which has been referred to by Defendants as a commercial inland marine policy.

6. The arson was unexpected and was done by persons unknown to the Plainitff. The arson substantially damaged three (3) of the Plaintiff's pieces of equipment/vehicles and caused full damage to the fourth item which, practically, rationally, reasonably, and within the meaning of the subject insurance policy, caused the fourth item to be "totaled" such that it was unrepairable or, if repairable, at such high cost that there would be no economic value or value of any kind to the attempted repair of this item. The totaled item referenced herein was a 2014 John Deere "648H Skidder,"

(hereinafter referred to as "648H Skidder") Identification Number: S#DW648HXPED659085.

7. The other three (3) items that were damaged by the arson were covered by the same subject insurance policy with the Defendants. Upon information and belief, the Policy Number is: BM0 (20) 58684409. The particular policy upon which this loss occurred ran from June 12, 2019 to June 12, 2020. This policy was fully in force and provided full replacement cost coverage to Plaintiff for its losses as of the date of the subject arson.

8. At all times pertinent, Plaintiff complied fully with the terms of this insurance policy; paid all applicable premiums; did nothing to cause or contribute to the losses; and did nothing to impact its entitlement of full replacement cost coverage for these items under the insurance policy.

9. After Plaintiff timely reported to Defendants the loss of the 648H Skidder and other vehicles, Defendants opened the claim and proceeded to adjust the claim. For more than a year, Defendants represented and confirmed to Plaintiff that the subject insurance policy provided "replacement cost coverage" ("RCC") for the items damaged. Defendants, through their representative, Jannell Anderson, repeatedly represented to Plaintiff, and subsequently to Plaintiff's counsel, that the subject insurance policy would provide replacement cost coverage, under the terms of this policy, for the 648H Skidder.

10. There are scores of references in Defendants own claim file to the Defendants' interpretation of their own policy as providing RCC, rather than actual cash value ("ACV"). Defendants were asked directly, and represented directly to Plaintiff, about this coverage and not on a single occasion for approximately one year and three months did Defendants state or even suggest that the replacement cost analysis did not apply

under their policy, a policy which Defendants drafted. Plaintiff accepted and relied upon Defendants' representations, which proved to be misrepresentations.

11. During the adjustment of the loss, there were repeated delays by Defendants' representatives in responding to the claim, responding to its insured, adjusting the claim, and ensuring that it was properly handled. Although a resolution was reached as to the other vehicles/equipment, Defendants "dug their heels" in on the 648H Skidder and refused to acknowledge the fact that the 648H Skidder was totaled in this loss and was incapable of any reasonable repair that would restore the vehicle to its previous condition and allow it to be used safely and effectively in this dangerous and arduous logging business.

12. Defendants asserted that Plaintiff's recovery under their replacement cost analysis was limited to cost of repair suggested by one, non-independent appraiser, someone picked by Defendants to evaluate the 648H Skidder. Plaintiff never agreed to, or accepted, the evaluation of the repairability of this vehicle and in fact continuously disputed its reparability. Defendants paid the Plaintiff's protestations in this regard "no mind," and continued to assert incorrectly that the reparability measure was whether the cost of repair of the unit exceeded 70 percent of the full replacement cost of the unit. Despite known repair costs exceeding approximately $80,000, and anticipated substantial other repair costs for the 648H Skidder, far exceeding this total, Defendants refused to acknowledge that there is no contractual, statutory, regulatory, or other law supporting its interpretation of this measure for replacement cost handling.

13. This "70 percent" rule, and Defendants' use of it as a measure against full replacement cost rather than actual cash value, is not contained in the subject insurance

contract anywhere, and is not even alluded to or suggested by any terms of the policy. Defendants never notified Plainitff of either element of this analysis, never warned Plaintiff about this, and never informed Plaintiff about this either before or after they had spent thousands upon thousands of dollars in premiums expecting full replacement cost coverage on the 648H Skidder under the terms of the policy.

14. Defendants never sought or obtained approval from the Maryland Insurance Commissioner on this analysis, and has never produced to Plainitff any internal policy memoranda or endorsements, or other writings in support of their approach. In essence, Defendants arbitrarily and capriciously, and without good faith, imposed a term of coverage on the Plaintiff which was completely unsupported, unfounded, unpracticable, and illegal.

15. Defendants violated the terms of the Code of Maryland Regulations (COMAR) which only authorized insurance carriers to ascribe this type of analysis by comparing repair cost to the vehicle's <u>actual cash value</u>. The 648H Skidder fully qualifies as a vehicle within the meaning of this COMAR regulation and the applicable Insurance Article, Annotated Code of Maryland. Thus, even accepting a previously undisclosed term of the contract permitted hypothetically an analysis of whether the 648H Skidder was "totaled" by applying a percentage of repair costs, Defendants unlawfully forced on Plaintiff an analysis whereby repair costs were compared to full replacement costs rather than the COMAR -- mandated reference to actual cash value. In this instance, Defendants determined that the actual cash value of the 648H Skidder was just over $100,000, and the known (minimum) repair costs of this vehicle exceeded $78,000, thereby easily qualifying the 648H Skidder as a total loss even within Defendants' analysis and policies.

Plaintiff, through counsel, in detail, informed Defendants of their misapplication of Maryland law, and the lack of support for their replacement cost applicability analysis and Defendants refused to fairly consider these issues and then arbitrarily and capriciously maintained their position, without any factual or legal support for it.

16. In fact, the 648H Skidder was "totaled" within the meaning of the insurance policy and applicable law. It was damaged beyond repair. It was damaged beyond reasonable, rational, and economic repair. Further, it was unusable in its dangerous and arduous setting such that even if the 648H Skidder had been made capable of being operated, physically, it would have posed immediate and grave danger to the workers who were operating it and to those exposed to its operation in the field.

17. It should be noted that as flawed as Defendants' approach was, Defendants made a substantial payment to the Plaintiff for repair costs which it determined, based on the subject insurance policy being a replacement cost policy. This payment, of approximately $78,000, was contrary to the subject insurance policy and applicable law.

18. Despite Plaintiff's protestations and challenges to the Defendants' analysis and adjustment of the loss, Defendants maintained their position, forcing Plaintiff to seek relief from the Maryland Insurance Administration which concluded in its investigatory stage that Defendants had breached the subject insurance policy. Defendants retained counsel and, subsequently, in or about September 2020, reported to Plaintiff that it had erred in its analysis of coverage and asserted, wrongfully, that the subject policy did not afford replacement cost coverage on the 648H Skidder; rather, for the first time, about one year and three months after the loss was reported, Defendants informed Plaintiff that

this policy was not a replacement cost policy; rather, Defendants asserted for the first time, and without lawful support, that this was an actual cash value policy.

19. Based on these misrepresentations, Defendants made a "settlement offer" to Plaintiff strictly under actual cash value principals. This "settlement offer" was contrary to the terms of the insurance policy; contrary to Maryland law; and was arbitrary, capricious, and made in bad faith. Defendants essentially forced upon Plaintiff a completely new evaluation of the loss evaluation with the clear intent to limit coverage and payments to the Plainitff even beyond what it had already spent more than one year calculating and administrating under replacement cost coverage.

20. Defendants' new position, to which Plaintiff did not consent, was predicated on advice of counsel focused on one particular clause of the insurance policy. Specifically, Defendants relied upon a new interpretation in September 2020, long after the loss was reported and adjusted by Defendants, of the "valuation" clause found in an endorsement applicable to contractors' equipment coverage. The policy's applicable limits, for replacement cost, exceeded $253,000 for the 648H Skidder. This is the amount of coverage which should have been extended to Plainitff, but was not, in clear breach of the insurance policy and applicable Maryland law by Defendants.

21. Under its new analysis in September 2020, Defendants suddenly rejected the replacement cost approach based on the following clause:

1. Replacement Cost

a. In the event of loss to covered "contractors' equipment", valuation will be based on replacement cost without any deduction for depreciation if the schedule lists that items model year, and that item's model year is less than 6 years old as of the

8

expiration date of this policy. This applies regardless of what valuation is shown on the "equipment schedule" (IM7031).

22. The referenced equipment scheduled lists the subject item as a 2014 648H Skidder. Although there is no "expiration" date of the policy, by its language, Defendants applied its "policy period" of June 12, 2019 to June 12, 2020 , as indicating the expiration date, i.e., June 12, 2020. Using this "model year" of 2014, Defendants then applied the second clause, erroneously, to say that items "model year" was less than 6 years old as of the expiration date of the subject policy.

23. Since the policy listed the unit's model year (2014), the first prong of the replacement cost endorsement clause above was met. Defendants stood their ground on the second clause, contending that the model year was <u>not</u> less than 6 years old as of the expiration date of this policy. What Defendants have failed to acknowledge is that a "model year" cannot be said to be less, more, or the same as the referenced "expiration" date of the policy of June 12, 2020. The "model year" of 2014 simply cannot logically, rationally, reasonably, or consistent with the English language and common usage be said to be either 6 years older, 6 years younger, or the same as June 12, 2020. In fact, roughly <u>half</u> of the model year of 2014 <u>is</u> less than 6 years old as of June 12, 2020, and roughly half of 2014 is greater than 6 years old as of June 12, 2020.

24. One cannot reasonably, logically, or rationally say that a referenced "model year," <u>i.e.,</u> 2014, as an annual segment consisting of 365 days, is less, more, or the same as 6 years old as of June 12, 2020. Yet, despite this language, at best ambiguous for Defendants, Defendants wrongfully and in breach of contract used this clause to deny Plainitff its full replacement cost coverage. In other words, Defendants, in an arbitrary and

9

capricious manner, and without good faith, imposed on Plaintiff a contractual term that Defendants used to "kick out" replacement cost coverage despite the fact that the very clause upon which they rely cannot, consistent with applicable law, common usage, and rational interpretation, be applied. About one-half of the dates in the year 2014 meet this clause and about one-half of the dates in the year 2014 do not meet this clause, as written.

25. Defendants drafted this contract, and cannot be said to complain that their own clause is incalculable. The referenced clause simply does not say what Defendants contend that it says.

26. Plaintiff is entitled to full replacement cost for the 648H Skidder of more than $253,000. In a nutshell, the policy afforded replacement cost coverage, not actual cash value coverage; the replacement cost policy limits are triggered, and should be paid because the 648H Skidder was totaled and, even if Defendants could employ a non-contractual requirement of 70 percent, the repair cost easily exceed 70 percent of the actual cash value. Under Defendants' own standards, the loss met its requirement for totaling the vehicle, thereby triggering Plaintiff's entitlement to the full policy limits for replacement cost greater than $253,000.

27. Defendants breached the subject insurance contract and did so without any rational or reasonable basis to do so. Defendants were poised to limit or deny coverage to Plaintiff for this loss, and when informed by their own counsel about the valuation clause and its subclause (the "less than 6 years old" subclause) pounced on this with the goal of defeating Plaintiff's claim, when Defendants knew or should have known that the subclause simply cannot be applied as it is nonsensical, irrational, unreasonable, and illogical. At any time, Defendants, drafters of the contract, could have put an actual "start"

date in this subclause, rather than the ambiguous and amorphous reference to "model year" which cannot be applied one way or the other as the document is drafted.

28. As a direct and proximate result of Defendants' breach of contract, and their careless, unfair, and arbitrary application of its policy, and disregard of applicable law, Plainitff has sustained substantial damages far exceeding even the policy limits for replacement cost coverage. The 648H Skidder still has not been compensated, depriving Plaintiff of the ability to replace the vehicle, and depriving Plaintiff of substantial related damages including substantial loss of income and revenues arising from Defendants' breach of contract, arbitrary, capricious, and bad faith adjustment of the claim. Plaintiff's business has materially and substantially cause to suffer. Plainitff has incurred substantial attorneys' fees, both from prior counsel and current counsel, costs, interest, and other such damages as will be proven at trial.

29. Defendants' actions were not made in good faith and were not made with the intention of fairly and honestly evaluating the claim. Defendants simply ignored, or at least failed to recognize the problems with their analysis, and the unenforceability of the very clause upon which they rely, to the great detriment and harm to the Plaintiff. Defendants' willingness to simply accept its counsel's new analysis, apparently without even reading the subclause upon which it hinges, reflects Defendants' willingness to follow any path that might deprive Plainitff of its entitled insurance coverage.

## COUNT I: BREACH OF CONTRACT

30. Plaintiff adopts and incorporates by reference, as if repeated fully herein, paragraphs 1 - 29 of this Complaint.

31. Defendants breached its subject insurance contract with the Plaintiff, without justification, and are indebted to the Plaintiff for the full policy limits of coverage for replacement costs and other damages.

32. As a direct and proximate result of the Defendants' breach of contract, as aforesaid, Plaintiff has been wrongfully denied its entitlement to full replacement cost coverage exceeding $253,000.

33. Defendants' breach of contract has caused Plaintiff to suffer unnecessary, substantial business losses, income losses, loss of use, attorneys' fees, interest, costs, and other such consequential damages as will be proven at trial.

WHEREFORE, the Plaintiff, Target Lumber & Logging Company, LLC, prays for damages against the Defendants, Liberty Mutual Insurance Company and Ohio Casualty Insurance Company, jointly and severely, in an amount in excess of $75,000.

**COUNT II: LACK OF GOOD FAITH AND ARBITRARY AND CAPRICIOUS APPLICATION AND ADJUSTMENT OF POLICY**

34. Plaintiff adopts and incorporates by reference, as if repeated fully herein, paragraphs 1 - 33 of this Complaint.

35. Plaintiff filed a claim in the Maryland Insurance Administration against the Defendants, based on the foregoing facts and law, and the Maryland Insurance Administration, in its investigatory stage, agreed that the Defendants had breached the subject insurance policy. Defendants filed a *de novo* appeal to the Office of Administrative Hearings ("OAH"). Prior to a hearing scheduled before the OAH on Defendants' appeal in January 2022, the parties to this case conferred and reached an agreement that the administrative claim would be dismissed without prejudice, and that Plaintiff would proceed with this action in the Circuit Court for Garrett County. It was further agreed that

Plaintiff has exhausted all administrative remedies and/or has fully complied with all statutory requirements to preserve and enable this civil cause of action available to it for the claims herein, and therefore Plaintiff can proceed with its lack of good faith and arbitrary and capricious claims against the Defendants in this action.

36. Accordingly, based on the foregoing, Plaintiff submits that the Defendants have acted with bad faith, and contrary to the applicable facts and law in this case, and contrary to its own insurance policy, in such a way to deprive Plaintiff of available insurance for its losses.

37. Defendants do not have a rational, lawful, or reasonable ground to limit Plaintiff's compensation for the losses sustained and have adjusted this loss with their own economic interest in mind, without due regard to Plaintiff's entitlement of full replacement cost coverage under the policy.

38. Defendants ignored Maryland law, ignored the terms of their insurance policy, and have sought to deny or limit coverage to the Plaintiff without factual or legal support for doing so.

39. Defendants handled this loss and policy as one of replacement cost for more than a year after the loss was reported, and then "switched gears" when they found what they perceived to be an easier path to deny coverage. The easier path, though, does not lawfully or rationally provide Defendants any relief. The very clause upon which they rely simply has no logical, reasonable, or legal meaning and was wrongfully utilized by Defendants to deprive Plaintiff of insurance coverage.

40. Moreover, under the replacement cost evaluation, which was required of this policy, Plainitff is entitled to policy limits under Defendants' own standards, if

applicable in the first place, because the repair cost of the 648H Skidder substantially exceeded 70 percent of the actual cash value of the vehicle.

41. Plaintiff, as a direct and proximate result of Defendants' lack of good faith and arbitrary and capricious adjustment of the loss, have suffered great damages, including being deprived of the full policy limits, loss of use, substantial economic losses to their business, attorneys' fees, interest, costs, and other such consequential damages as will be proven at trial.

WHEREFORE, the Plaintiff, Target Lumber & Logging Company, LLC, respectfully prays for all damages available to it under Maryland law against the Defendants, Liberty Mutual Automobile Insurance Company and Ohio Casualty Insurance Company, jointly and severely, in an amount in excess of $75,000. Plaintiff also seeks attorneys' fees incurred in having to prosecute this action in addition to attorneys' fees previously incurred and any other remedies allowed by law.

## **COUNT III: DECLARATORY JUDGMENT**

42. Plaintiff adopts and incorporates by reference, as if repeated fully herein, paragraphs 1 - 41 of this Complaint.

43. Plaintiff is entitled to a Declaratory Judgment interpreting the applicable terms of the subject insurance policy with Defendants, and based on the foregoing, Plaintiff submits that its interpretation of the subject policy is correct, both legally and factually, and that Defendants' interpretation of its insurance policy and applicable coverages is incorrect, illegal, contrary to the terms of the subject insurance policy, and was made in bad faith and for arbitrary and capricious reasons.

44. Plainitff, accordingly, seeks a declaration of this Court affirming its interpretation of the insurance policy, and declaring that Plaintiff is entitled to the full replacement cost policy limits plus all other additional and consequential damages including attorneys' fees and costs.

45. Plaintiff requests an expedited hearing on the declaratory judgment based on its ongoing substantial losses that are being incurred due to Defendants' decisions.

## COUNT IV:  UNJUST ENRICHMENT

46. Plaintiff adopts and incorporates by reference, as if repeated fully herein, paragraphs 1 - 45 of this Complaint.

47. Plaintiff acquired its insurance policy with the Defendants in good faith and expecting Defendants to honor the terms of the insurance policy and apply the insurance policy consistent with Maryland law.

48. Plaintiff paid approximately $50,000 in premiums to the Defendants to obtain insurance coverages including coverage on the subject 648H Skidder.

49. Plaintiff has been deprived of this money applicable to the premiums paid on the 648H Skidder for the loss involved, and Defendants have been unjustly enriched by such monies which were substantial and which Defendants accepted and have retained while not fulfilling the terms of this insurance policy.

50. Defendants have been unjustly enriched by their acquisition of substantial money from the Plaintiff for coverage on the 648H Skidder and failing to pay the benefits to the Plaintiff of such benefits purchased.

WHEREFORE, the Plaintiff, Target Lumber & Logging Company, LLC prays for damages against the Defendants, Liberty Mutual Insurance Company and Ohio Casualty for premiums in an amount less than $75,000 for the subject 648H Skidder which amounts have been retained by the Defendants herein.

Respectfully submitted,

**BUDOW AND NOBLE, P.C.**

_____
Walter E. Gillcrist, Jr., Esq., AIS # 8501010226
David H. Fleishman, Esq., AIS # 1712130177
Twinbrook Metro Plaza
12300 Twinbrook Parkway, Suite 540
Rockville, Maryland 20852
(301) 654-0896 telephone
(301) 907-9591 facsimile
wgillcrist@budownoble.com
dfleishman@budownoble.com
*Attorneys for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

I CERTIFY that the attached submission does not contain any restricted information or, if it does contain restricted information, a redacted submission has been filed contemporaneously pursuant to Rule 20-201(h).

_____
Walter E. Gillcrist, Jr., Esq., AIS # 8501010226
David H. Fleishman, Esq., AIS # 1712130177
Twinbrook Metro Plaza
12300 Twinbrook Parkway, Suite 540
Rockville, Maryland 20852
(301) 654-0896 telephone
(301) 907-9591 facsimile
wgillcrist@budownoble.com
dfleishman@budownoble.com
*Attorneys for Plaintiff*